**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
NEWPORT NEWS DIVISION**

| | |
|---|---|
| **JERRY S. GILSTRAP,** | |
| **Plaintiff,** | **Civil Action No.: _____** |
| **v.** | |
| | **Case No. CL1901807F-15 (Newport News Circuit Court)** |
| **HUNTINGTON INGALLS INCORPORATED** *f/k/a* **NORTHROP GRUMMAN SHIPBUILDING, INC.** *f/k/a* **NEWPORT NEWS SHIPBUILDING AND DRY DOCK COMPANY,** | |
| **Defendant.** | |

## <u>NOTICE OF REMOVAL</u>

PLEASE TAKE NOTICE that Defendant Huntington Ingalls Incorporated ("HIC" or the "Shipyard"), by counsel, pursuant to 28 U.S.C. §§ 1442 and 1446, hereby removes this civil action to the United States District Court for the Eastern District of Virginia from the Circuit Court for the City of Newport News, Virginia.  The specific grounds for removal are set forth below:

### I.    <u>OVERVIEW</u>

1.    On May 30, 2019, Plaintiff Jerry S. Gilstrap ("Plaintiff") filed his Complaint against HIC, commencing the action entitled *Jerry S. Gilstrap v. Huntington Ingalls Incorporated* in the Circuit Court for the City of Newport News, Case No. CL1901807F-15.  A true and correct copy of the Complaint is attached as **Exhibit 1**.

2.    HIC was served with the Summons and Complaint on June 11, 2019.  True and correct copies of the summons and service of process transmittal are attached collectively as **Exhibit 2**.

3.    HIC did not file responsive pleadings in Newport News Circuit Court in advance of removing the case to this Court.

4.      Plaintiff's claims in this case are based on alleged exposure to asbestos.  Plaintiff alleges that he was exposed to asbestos at the Shipyard "from approximately 1959 until 1964" while serving in the United States Navy as an Engine Room Supervisor on the USS *Robert E. Lee* (SSBN-601).  (Compl. ¶ 2).  During this period, Plaintiff claims he was exposed to asbestos products "manufactured and/or sold" by HIC, and that HIC "failed to property remove and abate" the asbestos on its premises "during the time Plaintiff was working there."  (Compl. ¶¶ 10, 14).  Plaintiff further alleges that HIC was negligent in failing to provide Plaintiff with safety equipment, failing to warn Plaintiff regarding the dangers of asbestos, and failing to follow and adhere to unspecified state and federal statutes.  (Compl. ¶ 17).

5.      HIC is, and was at all times relevant to the allegations in the Complaint, in the business of building ships and submarines.  Throughout the company's history, HIC has conducted a substantial amount of work as a government contractor constructing, overhauling, and repairing United States Navy ("Navy") vessels at its Newport News Shipyard.  The Newport News Shipyard has built more than thirty aircraft carriers and more than sixty submarines.

6.      Relevant to Plaintiff's claim in this case, HIC constructed the USS *Robert E. Lee* (SSBN-601)—a nuclear-powered ballistic missile submarine—between 1958 and 1960.  The *Robert E. Lee* was commissioned and turned over to the Navy's control on September 15, 1960.[1]

7.      The USS *Robert E. Lee* was built pursuant to HIC's contract with the Navy, according to the strict specifications of the Navy, and under the supervision of the Navy.  Decl. of Rear Admiral David P. Sargent, Jr. ¶¶ 30-54, attached as **Exhibit 3**.[2]

---

[1] These dates are easily verifiable.  Thus, although Plaintiff claims he "worked on the USS *Robert E. Lee*" at the Shipyard "from approximately 1959 until 1964," HIC assumes that timeframe was pled by mistake.

[2] Due to the large volume, the Exhibits to the Sargent Decl. are not included with this Notice of Removal, but they are available upon request.

8.     With respect to its construction of Navy vessels, including the USS *Robert E. Lee*, the Newport News Shipyard essentially functioned as a public Naval Shipyard.  Ex. 3, Sargent Decl. ¶ 52.

9.     Any asbestos used in the construction of the USS *Robert E. Lee* was used pursuant to the direction of the Navy.  *See* Ex. 3, Sargent Decl. ¶¶ 40-54, 59-70.

10.     During World War II and well into the 1960s, virtually all equipment that was to be installed in warships was procured by the Navy and provided to the building shipyard as government-furnished equipment.  Ex. 3, Sargent Decl. ¶ 41.  This includes equipment used in the construction of the USS *Robert E. Lee*.

11.     The Navy's contracts with HIC specified in great detail all the materials, processes and testing that were required by invoking numerous Navy or Military Specifications and Standards, and the work was overseen continuously by the onsite Navy Supervisor of Shipbuilding (SUPSHIP) commander and staff.  Ex. 3, Sargent Decl. ¶¶ 44, 45, 52.  These contracts were binding on HIC and required the use of specific products, including at times asbestos-containing products, in the construction of Navy ships and submarines.  *See* Ex. 3, Sargent Decl. ¶¶ 40-49, 59-70.  The ships and submarines conformed to and complied with the Government's specifications.  HIC could not vary from those detailed specifications and standards in any way without the express approval of the Navy and a modification to the contract documenting that approved change.  *See* Ex. 3, Sargent Decl. ¶¶ 51-54, 83.

12.     As a result, HIC has colorable federal defenses to Plaintiff's claims under *Boyle v. United Technologies Corp.,* 487 U.S. 500 (1988), *Yearsley v. WA Ross Construction Co.*, 309 U.S. 18 (1940), *Feres v. U.S.*, 340 U.S. 138 (1950), and the "combatant activities exception" of the

Federal Tort Claims Act.  This case is thus removable on the grounds of federal officer removal jurisdiction pursuant to 28 U.S.C. § 1442(a)(1).

13.     This Notice of Removal is timely.  The 30-day removal period prescribed by 28 U.S.C. § 1446(b) begins to run when a defendant is served with the initial pleading setting forth the claim for relief from which it may first be ascertained that the case is removable.  28 U.S.C. § 1446(b)(1).  HIC received Plaintiff's Complaint via certified mail on June 11, 2019, which put HIC on notice that Plaintiff's claim involves alleged exposure to asbestos during construction of a Navy vessel.  Thus, this Notice of Removal, filed within 30 days of service, is timely.

14.     This Notice of Removal and all exhibits hereto are being filed in the United States District Court for the district and division in which the state court action is pending.  *See* 28 U.S.C. § 1446(a).

15.     Pursuant to § 1446(a), HIC has filed herewith a copy of all process, pleadings, and orders served upon it in the case to date.

16.     Notice of removal has been, or will be, filed with the Newport News Circuit Court, and provided to all adverse parties pursuant to pursuant to 28 U.S.C. § 1446(d).

## II.     <u>JURISDICTION AND VENUE</u>

17.     The Court's subject matter jurisdiction is based on 28 U.S.C. §§ 1331 and 1442(a)(1) in that it is a civil action in which Plaintiff's alleged right to relief necessarily depends on the resolution of a substantial question of federal law.

18.     Venue is proper in the Eastern District of Virginia, Newport News Division, because the state court action was filed in the Circuit Court for the City of Newport News, Virginia. 28 U.S.C. §§ 1442(a).

### III.  GROUNDS FOR REMOVAL

19.     Removal is proper under 28 U.S.C. § 1442(a)(1) of any state court action against or directed to "[t]he United States or any agency thereof or any officer (or any person acting under that officer) of the United States or of any agency thereof … for or relating to any act under color of such office…."  28 U.S.C. § 1442(a)(1).

20.     "This statute overcomes the well-pleaded complaint rule by providing a method to remove a case brought in state court against a federal officer, or any other person acting under a federal officer, despite the absence of a federal cause of action." *Nesbiet v. Gen. Elec. Co.*, 399 F. Supp. 2d 205, 210 (S.D.N.Y. 2005) (citing *Jefferson County v. Acker*, 527 U.S. 423, 431 (1999). This statute "enables the defendant to have the validity of his immunity defense adjudicated, in a federal forum." *Arizona v. Manypenny*, 451 U.S. 232, 242 (1981).

21.     The Supreme Court has held that "the right of removal is absolute for conduct performed under color of federal office, and has insisted that the policy favoring removal 'should not be frustrated by a narrow, grudging interpretation of § 1442(a)(1).'" *Id.* at 242 (quoting *Willingham v. Morgan,* 395 U.S. 402, 406-07 (1969)).

22.     Removal pursuant to 28 U.S.C. § 1442(a)(1) is appropriate where the moving party (a) can show that it acted under the direction of a federal officer, (b) can demonstrate a "connection" or "association" between one or more of plaintiff's claims and the acts performed under color of federal office,[3] and (c) can raise a colorable federal defense. *Sawyer v. Foster Wheeler LLC*, 860 F.3d 249, 258 (4th Cir. 2017); *see also Ripley v. Foster Wheeler LLC,* 841 F.3d

---

[3] Before 2011, § 1442(a)(1) required that the suit be "*for* an act under color of office," which meant the defendant had to show a "causal connection between the charged conduct and the asserted official authority." *Sawyer v. Foster Wheeler LLC*, 860 F.3d 249, 258 (4th Cir. 2017) (emphasis in original).  However, in 2011 Congress added the words "or relating to" into the statute, and thereby "broaden[ed] the universe of acts that enable federal removal." *Id.* Under the new version of the statute, the Fourth Circuit has instructed "there need be only a connection or association between the act in question and the federal office" to support removal. *Id.*

207, 210 (4th Cir. 2016); *Papp v. Fore-Kast Sales Co.*, 842 F.3d 805, 812 (3d Cir. 2016); *Hagen v. Benjamin Foster Co.*, 739 F. Supp. 2d 770, 776 (E.D. Pa. 2010) (MDL Court).  Here, HIC has alleged these requirements and is thus entitled to remove the case.

### A.   HIC Was a "Person" Acting Under the Direction of the Navy.

23.     There is no doubt that HIC was a "person acting under" the Navy when it constructed the USS *Robert E. Lee*.  *See Sawyer*, 806 F.3d at 255.  "When a private entity is involved, the Supreme Court has interpreted the phrase 'acting under' to contemplate a relationship where the government exerts some 'subjection, guidance, or control,' and where the private entity engages in an effort 'to assist, or to help carry out, the duties or tasks of the federal superior.'"  *Id.* (quoting *Watson v. Philip Morris Companies, Inc.*, 551 U.S. 142, 152 (2007)).  Courts in the Fourth Circuit "unhesitatingly" treat this requirement as satisfied in cases "involving injuries arising from equipment that [the defendant] manufactured for the government."  *Id.* at 255; *see also Isaacson v. Dow Chem. Co.*, 517 F.3d 129, 136-37 (2d Cir. 2008) (holding that contracting to "provide a product that the Government was using during war—a product that in the absence of Defendants, the Government would have to produce itself"—is sufficient to satisfy the "acting under" prong).

24.     That is the case here.  To the extent HIC used any asbestos-containing products in the design or construction of the USS *Robert E. Lee*, HIC was acting under the direction of an officer of the United States within the meaning of 28 U.S.C. § 1442(a)(1) pursuant to its contract with the Navy.  HIC's execution of its contract with the Navy was done under the supervision and control of the Navy in strict accordance with precise specifications provided by the Navy.  *See* Ex. 3, Sargent Decl. ¶¶ 51-54.  If the materials or work failed to conform to the detailed Navy specifications, the Navy officers could and would reject the materials or work.  *See* Ex. 3, Sargent Decl. ¶¶ 40-54, 59-70.  Thus, the "acting under" requirement is satisfied.

**B.     HIC Asserts Four Colorable Federal Defenses.**

25.     HIC has asserted facts establishing four colorable federal defenses that entitle it to remove this case: (1) the government contractor defense under *Boyle v. United Technologies Corp.,* 487 U.S. 500 (1988); (2) derivative immunity under *Yearsley v. WA Ross Construction Co.*, 309 U.S. 18 (1940); (3) derivative immunity under *Feres v. U.S.*, 340 U.S. 135 (1950); and (4) pre-emption under the "combatant activities exception" of the Federal Tort Claims Act.

26.     "While the Court must require that the facts identified by the defendant support the federal defense, the Court is not called upon at this preliminary stage to pierce the pleadings or dissect the facts stated.  Nor is the Court's function at this stage to determine credibility, weigh the quantum of evidence or discredit the source of the defense."  *Hagen,* 739 F. Supp. 2d at 782.

> It is the sufficiency of the facts stated — not the weight of the proof presented — that matters.  For policy reasons, Congress has erected a road to federal court for litigants who can invoke a federal defense.  It is not the Court's role to impose judicially created tolls on those who seek to travel on it.  Thus, the Court concludes that a defense is colorable for purposes of determining jurisdiction under Section 1442(a)(1) if the defendant asserting it identifies facts which, viewed in the light most favorable to the defendant, would establish a complete defense at trial.

*Id.* at 782-83; *see also Papp*, 842 F.3d at 815 ("At the removal stage, [the defendant] needed only show that its asserted *Boyle* defense was 'colorable,' which is to say that the defense was 'legitimate and [could] reasonably be asserted, given the facts presented and the current law.'").

27.     HIC's construction of the USS *Robert E. Lee* pursuant to its contract with the Navy was done according to the strict specifications of the Navy and under the strict supervision of the Navy.  *See* Ex. 3, Sargent Decl. ¶¶ 51-54.

28.     The Navy selected the component parts and materials for the ships and submarines that HIC constructed, overhauled, and repaired, and specified their design, including the use of asbestos, if any.   Ex. 3, Sargent Decl. ¶¶ 36-50.   HIC had no discretion with respect to the

component parts and materials used in connection with constructing, overhauling, and repairing Navy ships and submarines. *Id.*

29.     This is true with respect to any asbestos-containing materials or component parts that were used. Due to the importance of heat transfer and insulation in Navy propulsion plants and aboard Navy vessels more generally, the Navy maintained significant expertise in this area. The BUSHIPS manual and other documents issued and continuously updated by the Navy contained detailed instructions for the insulation by Navy shipyards or private contractors of various systems and equipment. The Navy's specifications provided detailed instructions as to the specific insulating materials to be used, and also as to the amounts of those materials and the manner in which they were to be applied. *Id.* ¶ 61; *see id.* ¶¶ 59-70.

30.     Further, to achieve its objective of ensuring that any markings on the component parts or materials used in the construction of Navy ships filled the specific informational role the Navy desired, for the specific Navy audience and environment, the Navy developed precise specifications as to the nature of any markings, communications, or directions affixed to or made a part of any equipment supplied by equipment manufacturers for ultimate use aboard Navy ships. *Id.* ¶ 62. Constructing shipyards would not have been permitted, under the specifications, associated regulations and procedures, nor under the actual practice as it evolved in the field, to vary or to deviate in any respect from the Navy specifications in supplying equipment, including affixing any type of warning or caution statement to equipment intended for installation in a Navy ship, beyond those specifically required by the Navy without prior discussion and express approval by the Navy. *Id*.

31.     The Navy had state of the art knowledge concerning the potential risks associated with exposure to asbestos. The Navy was, and still is, one of the world's largest heavy industrial

concerns and had its own industrial hygiene program to provide protection for its uniformed and civilian workforce. As a result, Navy organizations, including the Bureau of Medicine and Surgery, the Bureau of Ships, and their successors, developed and acquired state of the art knowledge concerning the potential risks or hazards relating to work with or around asbestos-containing materials and products. The Navy possessed information superior to that of its government contractors on issues of industrial hygiene and asbestos medicine, including any potential risks involved with use of asbestos-containing components or materials. *Id.* at ¶ 16; *see also, e.g., Kraus v. Alcatel-Lucent et. al.,* No. CV 18-2119, 2018 WL 3585088, at *4-5 (E.D. Pa. July 25, 2018); *Zeringue v. Crane Co.*, 846 F.3d 785, 791–92 (5th Cir. 2017); *Shuman v. United States*, 765 F.2d 283, 285-86 (1st Cir. 1989); *Marley v. Elliott Turbomachinery Co., Inc.,* 545 F. Supp. 2d 1266, 1271 (S.D. Fla. 2008); *Pack,* 838 F. Supp. 1099; *Fung,* 816 F. Supp. 569; *Blackman v. Asbestos Defendants (BHC),* 1997 WL 703773, *3 (N.D.Cal. 1997); *Kase v. Metalclad Insulation Corp.*, 6 Cal. App. 5th 623, 643 (Ct. App. 2016).

32.     Shipyards, both public Naval Shipyards and private shipyards such as the Newport News Shipyard, were required to use exactly the materials specified by their contracts with the Navy and could not vary from those detailed requirements without prior approval from the Navy and a modification to the contract documenting any approved variation from the original contract. *See* Ex. 3, Sargent Decl. ¶ 70.

33.     The Navy exercised even more control over the Shipyard in the construction of nuclear submarines and ships, including for example the USS *Robert E. Lee* on which Plaintiff allegedly worked. The Shipyard is the only location in the United States where nuclear aircraft carriers have ever been built, and is presently only one of two yards where nuclear submarines are constructed. Since the beginning of its involvement in the Navy Nuclear Propulsion Program

("NNPP")—the program which allows the Shipyard to handle radioactive material necessary to construct nuclear submarines and aircraft carriers for the United States Government—the Shipyard has been required to obtain an annual license from the Navy.  The licensing process requires a full audit by the Navy every other year of the Shipyard's internal practices and compliance with Navy requirements, and a detailed inspection of the premises by Navy personnel.  Pursuant to NNPP, the Navy had unfettered access to the Shipyard's premises during the time period in question.

34.    All Navy ships and submarines constructed by the Newport News Shipyard were subject to inspection and testing by the Navy prior to approval to ensure complete conformity with the design specifications.  *See* Ex. 3, Sargent Decl. ¶ 51.

i.    *Boyle v. United Technologies Corp.*

35.    Based on these facts, all of Plaintiff's claims against HIC are affirmatively barred by the government contractor defense as set forth by the U.S. Supreme Court in *Boyle v. United Technologies Corp.,* 487 U.S. 500 (1988).  Pursuant to this federal defense, government contractors, such as HIC, are immune from liability arising from work performed for the United States military when: (a) the United States approved reasonably precise specifications; (b) the equipment conformed to these specifications; and (c) the equipment supplier warned the military about any hazards involved in the use of the equipment that are known to the equipment supplier but not known to the military.  *Boyle,* 487 U.S. at 512; *see also Sawyer,* 860 F.3d at 256; *Papp*, 842 F.3d at 814.

36.    Analyzing the *Boyle* factors in light of the facts set forth above, it is clear that HIC has a colorable federal defense with respect to Plaintiff's claims: (a) the Navy provided strict design specifications for the construction of the USS *Robert E. Lee*, including the use of asbestos-containing products and equipment, if any, (b) HIC complied with the Navy's specifications for

the construction of the USS *Robert E. Lee*, including the use of asbestos-containing products, if any, and (c) the Navy had state of the art knowledge and was aware of potential health hazards of working with or around asbestos-containing materials, and thus, HIC would not have had knowledge of any hazards associated with the use of the equipment or materials which was not already known to the United States.  HIC is thus entitled to the government contractor defense with respect to Plaintiff's claims.  *See Sawyer,* 860 F.3d at 256; *Ripley*, 841 F.3d 207; *see also Papp*, 842 F.3d at 814; *Vedros v. Northrop Grumman Shipbuilding, Inc.*, No. CIV.A. 2:11-67281-ER, 2012 WL 3155180, at *7 (E.D. Pa. Aug. 2, 2012).

37.     This analysis applies equally to Plaintiff's failure to warn claim.  As the Fourth Circuit has made clear, the government contractor defense applies equally to design defect and failure to warn cases alike.  *Ripley*, 841 F.3d at 211; *Sawyer,* 860 F.3d at 256.  As set forth in *Sawyer,* the defense is established as to a failure to warn claim when "(1) the government exercised its discretion and approved certain warnings; (2) the contractor provided the warnings required by the government; [and] (3) the contractor warned the government about dangers in the equipment's use that were known to the contractor but not to the government."  860, F.3d at 256.  For the reasons already stated in the paragraph above, all these requirements are satisfied.  Not only did the Shipyard supply the required warnings specified by the Navy, it would not have been permitted to vary or to deviate in any respect from those warnings without prior discussion and express approval of any change.  Ex. 3, Sargent Decl. ¶¶ 81-95.

38.     HIC has successfully removed a number of cases alleging facts similar to those in Plaintiff's Complaint.  *See, e.g.*, *Rogers v. A.O. Smith Corp., et. al,* Civ. No. 2:19cv573 (E.D. Pa. Feb. 8, 2019)*; Sullivan v. A.W. Chesterton, Inc. et. al.,* Civ. No. 2:18-cv-03622 (E.D. Pa. Aug. 22, 2018); *Fend v. Allen-Bradley Company, et. al.,* Civ. No. 2:17cv1701-ER (E.D. Pa. Apr. 20, 2017);

*Terry et al v. Thomas Dee Engineering Company et al*, No. 2:12-cv-03576-DSF-MAN (C.D. Cal. April 25, 2012); *Cotten v. Asbestos Corp Ltd et al*, No. 3:14-cv-02124-JD (N.D. Cal. May 8, 2014); *Fannin et al v. Asbestos Corporation Limited et al*, No. 3:11-cv-06156-WHO (N.D. Cal. December 7, 2011); *see also, e.g., Quisenberry v. BorgWarner Morse Tec Inc.*, Civil Action No. 4:16cv126 (E.D. Va. Jan. 30, 2017); *Blackburn v. Northrup Gruman Newport News*, 2:07-CV-63993-ER (E.D. Pa. MDL 875 Aug. 10, 2011) (denying Plaintiff's Motion for Remand in fifteen separate cases against the Shipyard).   HIC is entitled to the same outcome here.

ii.     ***Yearsley v. WA Ross Construction Co.***

39.     HIC is also entitled to federal officer removal under 28 U.S.C. 1442(a)(1) based upon the separate and additional federal defense of derivative sovereign immunity as set forth in *Yearsley v. WA Ross Construction Co.*, 309 U.S. 18 (1940).

40.     *Yearsley* established that a government contractor, performing at the direction and authorization of a government officer, is immune from suit based upon performance of the contract.  *Id.* at 20-21; *Campbell-Ewald Co. v. Gomez*, 136 S. Ct. 663, 673 (2016), *as revised* (Feb. 9, 2016) ("Where the Government's 'authority to carry out the project was validly conferred, that is, if what was done was within the constitutional power of Congress,' we explained, 'there is no liability on the part of the contractor' who simply performed as the Government directed." (quoting *Yearsley*)).

41.     For the reasons previously stated herein, that is the case here.  To the extent HIC used asbestos in the construction of the USS *Robert E. Lee*, it did so as a result of the Navy's strict design specifications.  In other words, HIC's use of such products occurred at the direction of the Navy, acting pursuant to government authorization, such that if the government had performed these acts directly, it would be immune from suit.  HIC should be as well.

### iii.    Feres v. U.S.

42.    HIC has also asserted a colorable defense under *Feres v. U.S.*, 340 U.S. 135 (1950). In *Feres*, the United States Supreme Court held that the United States government is immune from suit by service members for "injuries that arise out of or in the course of activity incident to service."  *Id.* at 146.  Here, HIC acted under the direction and control of the United States Navy, and it is entitled to derivative immunity.

43.    Plaintiff alleges that he served in the United States Navy, and that he was exposed to asbestos while serving on a Navy ship—the USS *Robert E. Lee*.  Under *Feres*, Plaintiff plainly could not assert a claim against the United States for his service-related injuries.

44.    As discussed herein, the Shipyard constructed the USS *Robert E. Lee* according to the strict specifications of the Navy, including the use of asbestos, if any.  As a government contractor following the specifications of the Navy, the Shipyard should be entitled to the same immunity afforded the United States under *Feres*.

### iv.    *Combatant Activities Exception*

45.    HIC is also entitled to removal under 28 U.S.C. 1442(a)(1) based upon its colorable federal defense under the "combatant activities exception" of the Federal Tort Claims Act, which bars suit against the federal government for claims "arising out of the combatant activities of the military or naval forces, or the Coast Guard, during time of war."  28 U.S.C. § 2680(a).  The principles underlying the combatant activities exception have been extended to preempt claims against government contractors.  *See, e.g., Saleh v. Titan Corp.*, 580 F.3d 1 (D.C. Cir. 2009); *Koohi v. United States,* 976 F.2d 1328, 1336 (9th Cir. 1992); *Johnson v. United States*, 170 F.2d 767, 770 (9th Cir. 1948).

46.     The Fourth Circuit has adopted the two-prong test for the "combatant activities" exception enunciated by the Ninth and Third Circuits.  *In re KBR, Inc., Burn Pit Litig.*, 744 F.3d 326, 351 (4th Cir. 2014).  The first prong of this test asks "whether the contractor is integrated into the military's combatant activities."  *Id.* at 351.  The second prong asks "the military retain[ed] command authority"" over the activities at issue.  *Id.*  Here, both prongs are satisfied.

47.     The Shipyard's construction of a nuclear-powered ballistic missile submarine, built and commissioned at the outset of the Vietnam War, satisfies the "combatant activities" prong.  A contractor does not have to participate in actual combat to invoke immunity under this provision.  Rather, combatant activities "include not only physical violence but activities both necessary to and in direct connection with actual hostilities."  *Id.* (citations omitted).  Here, not only was the USS *Robert E. Lee* constructed and commissioned during wartimes, Mr. Gilstrap's alleged service on the USS *Robert E. Lee* occurred during active hostilities—specifically, the Vietnam War.  *See* Compl. ¶ 6(g).  This same period also saw rising tensions in the Middle East and the continuation of the Cold War.

48.     The second prong is also satisfied.  As discussed herein, the Navy retained command control over the construction of the ship and specified the materials to be used, including asbestos-containing materials, if any.

49.     Thus, HIC has asserted a colorable defense that it is entitled to immunity under the "combatant activities" exception to the Federal Tort Claims Act.

**C.     HIC Has Demonstrated a Connection Between Plaintiff's Claims and the Acts It Performed Under Color of Federal Office.**

50.     Finally, HIC has plainly demonstrated a "connection" or "association" between Plaintiff's claims in this action and the acts taken by HIC under the direction of federal officers. In fact, HIC has shown the "causal nexus" formerly required under § 1441(a)(1).  Plaintiff's claims

14

against HIC arise from Mr. Gilstrap's alleged exposure to asbestos on a Navy submarine constructed by HIC pursuant to the specifications of its contracts with the Navy and under the direct supervision of the Navy.  As set forth above, the claims against HIC are inseparable from the government specifications that required the use of asbestos, if any, such that a clear causal nexus exists between Plaintiff's claims and the acts performed by HIC under color of federal office. *See Boyle,* 487 U.S. 500; *Sawyer*, 860 F.3d at 258; *Ripley*, 841 F.3d at 211; *Papp*, 842 F.3d at 813; *Mitchell v. AC & S, Inc.*, No. CIV.A. 4:04CV2713, 2004 WL 3831228, at *12-13 (E.D. Va. Dec. 15, 2004); *Magnin,* 91 F.3d at 1427; *Marley,* 545 F. Supp. 2d at 1271; *Sundstrom v. McDonnell Douglas Corp.,* 816 F.Supp. 587 (N.D. Cal. 1993); *Fung,* 816 F.Supp. 569; *Pack,* 838 F. Supp. 1099.  All the more so, a "connection" or "association" between the act in question and the federal office has been demonstrated.

## IV.    CONCLUSION

51.    Removal of this action is proper under 28 U.S.C. § 1442 (a)(1).

52.    Should Plaintiff move to remand this case, HIC respectfully requests an opportunity to respond more fully in writing, including the submission of additional affidavits and authority.

53.    HIC reserves all of its defenses.

WHEREFORE, Huntington Ingalls Incorporated has stated sufficient bases for removal under § 1442, and thus, respectfully requests that this matter proceed in federal court.  This Notice has been served on all counsel of record on the date and manner stated in the Certificate of Service.

Respectfully submitted this 1st day of July, 2019.

**HUNTON ANDREWS KURTH LLP**

*/s/ Alexandra B. Cunningham*
Alexandra Brisky Cunningham (VSB No. 46197)
Merideth Snow Daly (VSB No. 86102)
Hunton Andrews Kurth LLP
951 East Byrd Street
Riverfront Plaza, East Tower
Richmond, Virginia 23219
Telephone: (804) 788-8403
acunningham@huntonak.com
mdaly@huntonak.com

Wendy C. McGraw (VSB No. 37880)
Hunton Andrews Kurth LLP
500 E. Main Street, Suite 1301
Norfolk, VA  23510
Phone:  (757) 640-5336
wmcgraw@HuntonAK.com

***Attorneys for Defendant Huntington Ingalls Incorporated***

## CERTIFICATE OF SERVICE

I, Alexandra B. Cunningham, hereby certify that a copy of the attached Notice of Removal and its attachments was served upon all parties of record by first class U.S. Mail, postage prepaid, on July 1, 2019.

/s/ Alexandra B. Cunningham
Alexandra B. Cunningham